**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**MANHATTAN DIVISION**

| | |
|---|---|
| **JACK KASIOTIS, DELANO ANGLIN, and** ) <br> **SHANTEL RANSOME, on behalf of** ) <br> **themselves and others similarly situated,** ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> **AWP, Inc.,** ) <br> **d/b/a AREA WIDE PROTECTIVE,** ) <br> ) <br> Defendant. | **CASE NO. 1:18-cv-11825** <br><br> **PLAINTIFFS' COLLECTIVE AND** <br> **CLASS ACTION COMPLAINT** <br><br> **JURY DEMAND ENDORSED HEREON** |

Now come Plaintiffs Jack Kasiotis ("Plaintiff Kasiotis"), Delano Anglin ("Plaintiff Anglin"), and Shantel Ransome ("Plaintiff Ransome") (collectively "Plaintiffs"), by and through counsel, and for their Complaint against AWP, Inc., d/b/a Area Wide Protective ("AWP"), state and allege the following:

**INTRODUCTION**

1.     This is a "collective action" instituted by Plaintiffs as a result of Defendant's practices and policies of not paying its traffic control specialists, including Plaintiffs, for all hours worked, resulting in unpaid earned wages including overtime compensation at the rate of one and one-half times their regular rates of pay for all of the hours they worked over 40 each workweek, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.

2.     Plaintiffs also bring claims as class actions pursuant to Fed. R. Civ. P. 23 for Defendant's violations of New York wage and hour laws, in particular 12 NYCRR § 142-2.1 *et seq.* ("New York Wage Law") pursuant to NY CLS Labor § 198; and violations of the Indiana Wage Payment Statute. I.C. 22-2-5 *et seq.* ("IWPS"); and violations of Pennsylvania Minimum

1

Wage Act of 1968, 43 P.S. §§ 333.101 *et seq*., and the Pennsylvania Wage Payment and Collection Law 43 P.S. §§ 260.1, *et seq*. ("Pennsylvania Wage Acts").

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. §1331 and 29 U.S.C. § 216(b).

4.     This Court has supplemental subject matter jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367 because they form a part of the same case or controversy.

5.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant conducts business throughout this District and Division, and a substantial part of the events and omissions giving rise to the claims occurred in this District and Division.

## PARTIES

6.     Plaintiff Kasiotis is a citizen of the United States, a resident of Sullivan County, New York, and performed work for Defendant in New York.

7.     Plaintiff Anglin is a citizen of the United States, a resident of St. Joseph County, Indiana, and performed work for Defendant in Indiana.

8.     Plaintiff Shantel Ransome is a citizen of the United States, a resident of Dauphin County, Pennsylvania, and performed work for Defendant in Pennsylvania.

9.     Plaintiffs' written consents to join this action is being filed pursuant to 29 U.S.C. § 216(b) are attached as **Exhibit A**.

10.     Defendant is a for-profit corporation, registered to do business in New York and can be served through its Statutory Agent: CT Corporation System, at 111 Eighth Avenue, New York, New York, 10011.

11.     At all times relevant herein, Plaintiffs were "employees" within the meaning of 29 U.S.C. § 203(e), and covered under the protections of the New York Wage Law, the IWPS, and the Pennsylvania Wage Acts.

12.     At all times relevant herein, Defendant was an "employer" within the meaning of 29 U.S.C. § 203(d), and subject to the requirements of the New York Wage Law, the IWPS, and the Pennsylvania Wage Acts.

13.     At all times relevant herein, Defendant was an "enterprise" within the meaning of 29 U.S.C. § 203(r).

14.     At all times relevant herein, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

15.     At all times relevant herein, Plaintiffs were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 206-207.

## FACTUAL ALLEGATIONS

16.     Defendant provides temporary work zone operations including traffic control activities and flagging at worksites throughout the United States.

17.     On a daily basis, Defendant deploys approximately thousands of traffic control specialists to worksites throughout approximately 19 states with approximately 60 AWP offices.

18.     At all times relevant herein, Plaintiffs and others similarly-situated were employed by Defendant as traffic control specialists.

19.     Plaintiffs were employed by Defendant within the last three years, and worked more than 40 hours in workweeks during all times relevant to this complaint.

20.     Plaintiffs and other similarly-situated traffic control specialists were employed by Defendant to perform non-exempt work, which primarily consisted of standing and controlling

traffic through temporary work zones, as well as transporting equipment, tools, and other traffic control specialists to Defendant's meeting locations and/or worksites.

21.     Plaintiffs and other similarly-situated traffic control specialists were paid an hourly wage.

### Defendant Failed to Pay Traffic Control Specialists for All Hours Worked

22.     Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

23.     Plaintiffs and other similarly-situated traffic control specialists drove to and from their worksites in pick-up trucks which were owned and controlled by Defendant.

24.     Plaintiffs and others similarly-situated typically started and ended each day at either an AWP business location or their own homes.

25.     Defendant paid Plaintiffs and others similarly-situated only for worked performed from the time they arrived and left a worksite.

26.     Plaintiffs and others similarly-situated performed compensable work that was not paid by Defendant and remains unpaid.

27.     Plaintiffs and others similarly-situated performed this unpaid compensable work before arriving to and after leaving from their respective worksites.

28.     Unpaid compensable work included:

   a)  Picking up/dropping off, and transporting other AWP traffic control specialists to/from worksites;

   b)  Driving AWP vehicles to and/or from their homes and/or an AWP business location or meeting place to/from worksites at the beginning and/or end of each day;

   c)  Transporting necessary AWP tools and equipment to/from jobsites;

   d)  Completing pre- and post-trip inspections on AWP's vehicles;

e)  Refueling AWP's vehicles;

29.     These activities constituted Plaintiffs' and other similarly-situated traffic control specialists' principal activities and/or were integral and indispensable parts of their principal activities, were required by Defendant, and were performed for Defendant's benefit.

30.     These activities were intrinsic and indispensable elements of the principal activities of Plaintiffs and others similarly situated, because Defendant's traffic control operations could not be accomplished without safely running vehicles transporting the necessary employees, tools, and/or equipment.

31.     These activities were necessary because, for example, Plaintiffs and others similarly-situated could not perform their own jobs without first driving AWP's vehicles, equipment, and/or other employees to/from the jobsites.

### Defendant Failed to Pay for Time Spent
### Picking Up/Dropping Off, and Transporting Other AWP Employees

32.     Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

33.     Plaintiffs and others similarly-situated were regularly required to pick up other AWP employees, from their homes or from a temporary employment agency, and transport them to their respective assigned worksite.

34.     Plaintiffs and others similarly-situated would then have to drop the AWP employees off at the end of the day.

35.     The time spent performing this additional compensable work was typically tracked by Plaintiffs and others similarly-situated by recording the pick-up and drop-off times.

36.     The additional time spent picking up, dropping off, and otherwise transporting other employees of Defendant added up to approximately one (1) to two (2) hours in a workweek, and sometimes more.

37.     Having to pick up/drop off, transport other similarly-situated traffic control specialists typically added additional drive time, and took Plaintiffs and others similarly-situated beyond their normal commute, when compared to a direct commute to a drive site.

38.     This time worked was compensable under the continuous workday rule because it was a principal activity that occurred between the commencement of the first principal activity and the completion of the last principal activity each workday of Plaintiffs and others similarly-situated.

39.     This work activity was not performed for the convenience of Plaintiffs and others similarly-situated, but rather because it was an integral, intrinsic, and indispensable part of the principal activities of Plaintiffs and others similarly-situated, was required by Defendant, and was performed for Defendant's benefit.

40.     Defendant's class-wide practices and policies of not paying Plaintiffs and others similarly-situated for time spent transporting similarly-situated traffic control specialists, deprived Plaintiffs and others similarly-situated of wages earned, including overtime compensation.

41.     The amount of time spent transporting similarly-situated traffic control specialists and the amount of unpaid wages, including overtime, is more than *de minimis.*

42.     Defendant failed to make, keep and preserve accurate records of all unpaid work time that Plaintiffs and others similarly-situated spent transporting similarly-situated traffic control specialists.

43.    Defendant's failure of not paying Plaintiffs and others similarly-situated for time spent transporting similarly-situated traffic control specialists was knowing and willful.

### Defendant Failed to Pay Traffic Control Specialists for
### Time Spent Driving To/From Worksites

44.    Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

45.    Plaintiffs and others similarly-situated traffic control specialists drove AWP's vehicles to/from either their homes or AWP's business locations or central meeting locations to/from worksites.

46.    For example, Plaintiffs were either required to first drive to a central meeting location to/from worksites, and/or pick up other traffic control specialists to/from the worksites and/or to/from the central meeting locations.

47.    This work time was tracked because Plaintiffs and others similarly-situated typically recorded the respective arrival/departure times for their homes or AWP's business locations, and the times they arrived at the worksites, on forms or in AWP tablets.

48.    Plaintiffs and others similarly-situated also typically recorded mileage.

49.    The additional work time driving to/from worksites is estimated to be approximately three (3) to ten (10) hours per workweek each way, so approximately six (6) to twenty (20) additional hours per workweek in drive time.

50.    By driving AWP vehicles to worksites, Plaintiffs and others similarly-situated were transporting tools and equipment for Defendant's benefit, so that they could perform their non-exempt job duties, also for Defendant's benefit. Tools and equipment included cones, road signs, sidewalk signs, barrels, arrow boards, and paddles.

51.     The vehicles used by Plaintiffs and others similarly-situated to transport Defendant's tools and equipment were conspicuously marked with Defendant's name and/or logo, and had flashing lights on the top, which Plaintiff and others similarly-situated are trained and required to use when approaching a worksite.

52.     This drive time is compensable under the continuous workday rule because transporting Defendant's tools and equipment was a principal activity that occurred between the commencement of the first principal activity and the completion of the last principal activity each workday of Plaintiffs and others similarly-situated.

53.     The work Plaintiffs and others similarly-situated performed when driving AWP's vehicles, along with tools and equipment, was integral, intrinsic, and indispensable parts of their principle activities, was required by Defendant, and was performed for Defendant's benefit.

54.     Plaintiffs and others similarly-situated would be unable to start or complete their job duties as traffic control specialists without the tools and equipment at the worksites, nor could they leave the tools, equipment or vehicle at the worksite when they left.

55.     Defendant's class-wide practices and policies of not paying Plaintiffs and others similarly-situated for time spent driving AWP vehicles and transporting Defendant's tools, equipment, and traffic control specialists to/from worksites, deprived Plaintiffs and others similarly-situated of wages earned, including overtime compensation.

56.     The amount of time spent driving AWP vehicles and transporting Defendant's tools, equipment, and traffic control specialists to/from worksites and the amount of unpaid overtime is more than *de minimis*.

57.     Defendant failed to make, keep and preserve accurate records of all unpaid work time that Plaintiffs and others similarly-situated spent driving AWP vehicles and transporting Defendant's tools, equipment, and traffic control specialists to/from worksites.

58.     Defendant's failure of not paying Plaintiffs and others similarly-situated for time spent driving AWP vehicles and transporting Defendant's tools, equipment, and traffic control specialists to/from worksites was knowing and willful.

### Defendant Failed to Pay Traffic Control Specialists for Time Spent Performing Pre- and Post-Trip Inspections

59.     Plaintiffs and others similarly-situated typically performed pre- and post-trip inspections on AWP's vehicles, including completing reports and forms.

60.     These inspections were required by Defendant, and considered necessary for safety reasons, and critical to the successful transportation of AWP vehicle, tools, equipment, and traffic control specialists workers to/from worksites.

61.     Inspections included checking things like headlights, turn signals, windshield wipers, tire pressure, oil & fluids, checking for dents and leaks, and confirming that the AWP vehicle was loaded with Defendant's tools and equipment, such as all necessary signs, paddles, night wands, cones, walkie-talkies, flashlights, stands, etc.

62.     Inspections were tracked, including date and time, via paper forms and/or AWP electronic tablets.

63.     Inspections typically took approximately fifteen (15) to twenty (20) minutes to complete. Pre- and post-trip inspections were typically conducted per day, so this amounts to approximately thirty (30) to forty (40) minutes per day completing the inspections and the respective paperwork and/or tablet input.

64.     Time that Plaintiffs and others similarly-situated is compensable under the continuous workday rule, because the inspections were the first and/or last principal activity they typically performed every workday.

65.     The inspections were integral, intrinsic, and indispensable parts of the principal activities of Plaintiffs and others similarly-situated, were required by Defendant, and were performed for Defendant's benefit.

66.     The safe and proper functioning of the vehicles was primarily to Defendant's benefit, as it ensures compliance with local and/or federal law, and the safe and efficient transportation of AWP's traffic control specialists, AWP's tools and equipment, and AWP's vehicles to/from worksites.

67.     Plaintiffs and others similarly-situated would not be able to perform their job duties for Defendant without safely arriving themselves, along with tools and equipment, to/from their respective worksites.

68.     Defendant's class-wide practices and policies of not paying Plaintiffs and others similarly-situated for time spent completing pre and post-trip inspections, deprived Plaintiffs and others similarly-situated of wages earned, including overtime compensation.

69.     The amount of time spent completing pre and post-trip inspections and the amount of unpaid overtime is more than *de minimis.*

70.     Defendant failed to make, keep and preserve accurate records of all unpaid work time that Plaintiffs and others similarly-situated spent completing pre and post-trip inspections.

71.     Defendant's failure of not paying Plaintiffs and others similarly-situated for time spent completing pre and post-trip inspections was knowing and willful.

**Defendant Failed to Pay Traffic Control Specialists for Time Spent Re-Fueling Vehicles**

72. Plaintiffs and others similarly-situated were required to re-fuel Defendant's vehicles approximately once a day.

73. Re-fueling took approximately thirty (30) minutes per week.

74. This work time is compensable under the continuous workday rule, because re-fueling Defendant's vehicles was a principal activity that occurred between the commencement of their first principal activity and the completion of their last principal activity per workday.

75. Re-fueling Defendant's vehicles was an integral, intrinsic, and indispensable part of the principal activities of Plaintiffs and others similarly-situated, was required by Defendant, and was performed for Defendant's benefit.

76. Plaintiffs and others similarly-situated would be unable to perform their job duties for Defendants, if the AWP vehicle did not have sufficient fuel to transport traffic control specialists, tools, or equipment to/from worksites.

77. Defendant's class-wide practices and policies of not paying Plaintiffs and others similarly-situated for time spent re-fueling, deprived Plaintiffs and others similarly-situated of wages earned, including overtime compensation.

78. The amount of time spent re-fueling and the amount of unpaid overtime is more than *de minimis.*

79. Defendant failed to make, keep and preserve accurate records of all unpaid work time that Plaintiffs and others similarly-situated spent re-fueling.

80. Defendant's failure of not paying Plaintiffs and others similarly-situated for time spent re-fueling was knowing and willful.

## COLLECTIVE ACTION ALLEGATIONS

81.     Pursuant to 29 U.S.C. §216(b) Plaintiffs bring Count I of this action on their own behalf, and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendant's unlawful conduct.

82.     The class which Plaintiffs seek to represent and for whom Plaintiffs seek the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiffs themselves are members, is composed of and defined as follows:

> **All current and former traffic control specialists employed by AWP, Inc. within three (3) years preceding the date of filing of this Complaint to the present (the "FLSA Collective").**

83.     At this time, Plaintiffs are unable to state the exact size of the potential collective, but upon information and belief, avers that it consists of at least several thousand persons.

84.     This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid wages earned, including overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA. In addition to Plaintiffs, numerous current and former employees are similarly situated with regard to their claims for unpaid wages and damages. Plaintiffs are representatives of those other employees and are acting on behalf of their interests as well as their own in bringing this action.

85.     These similarly-situated employees are known to Defendant and are readily identifiable through Defendant's payroll records. These individuals may readily be notified of this action, and allowed to opt in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

## COUNT ONE
### (Fair Labor Standards Act Violations)

86.     Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

87.     Plaintiffs and others similarly-situated were "employees" covered by the FLSA.

88.     Plaintiffs and others similarly-situated are not exempt from the protections of the FLSA.

89.     Defendant is an "employer" covered by the FLSA.

90.     Plaintiffs worked hours for which they were unpaid, including hours in excess of 40 in a workweek for which Defendant did not pay them compensation for all overtime hours worked in a workweek.

91.     Defendant's practices and policies of not paying Plaintiffs and others similarly-situated for all time worked, including overtime compensation at the rate of one and one-half times their regular rate of pay for all of the hours they worked over 40 each workweek violated the FLSA, 29 U.S.C. §§ 201-219.

92.     Defendant's failure to keep records of all the hours worked each workday and the total hours worked each workweek by Plaintiffs and other similarly-situated traffic control specialists violated the FLSA, 29 U.S.C. §§ 201-219, 29 CFR § 516.2(a)(7).

93.     By engaging in the above-described practices and policies, Defendant willfully, knowingly and/or recklessly violated the provisions of the FLSA.

94.     As a result of Defendant's practices and policies, Plaintiffs and other similarly-situated employees have been damaged in that they have not received wages due to them pursuant to the FLSA; because wages remain unpaid, damages continue.

### COUNT TWO - NEW YORK STATE VIOLATIONS
**(Class Action – Plaintiff Kasiotis)**

95.     Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

96.     Plaintiff Kasiotis brings this claim as a class action pursuant to Fed. R. Civ. P. 23 for Defendant's violations of New York wage and hour laws, in particular 12 NYCRR § 142-2.1 *et seq*. ("New York Wage Law") pursuant to NY CLS Labor § 198, individually and on behalf of all persons currently or previously employed by Defendant in New York within the last six (6) years.

97.     At all relevant times Plaintiff Kasiotis was an employee and Defendant was an employer pursuant to New York Wage Law.

98.     Other employees similarly situated to Plaintiff  Kasiotis are or were employed by Defendant in New York within the last six (6) years.

99.     Plaintiff Kasiotis and other similarly-situated employees regularly worked over 40 hours in a workweek during the last six (6) years for Defendant in New York, and for which Defendant did not pay them compensation for all overtime hours worked in a workweek.

100.     Plaintiff and other similarly situated employees were not exempt from the protections of New York Wage Law.

101.     Plaintiff Kasiotis brings this action pursuant to Fed. R. Civ. P. 23, individually and behalf of all other current or former similarly situated persons employed by Defendant in New York within the last six (6) years defined as:

> **All current and former traffic control specialists employed by AWP, Inc. in New York at any time within three (3) years preceding the date of filing of this Complaint to the present (the "New York Class").**

102.    The class is so numerous that joinder of all class members is impracticable. Plaintiff Kasiotis is unable to state the exact size of the potential New York Class but, upon information and belief avers that it consists of at least more than 40 persons.

103.    Named Plaintiff Kasiotis's claims are typical of the claims of the New York Class, because they were subject to the same unlawful wage policies and practices of Defendant.

104.    There are questions of law or fact common to the New York Class including: whether Defendant failed to pay the New York Class members for all time worked and whether that resulted in the underpayment of overtime.

105.    Plaintiff Kasiotis will adequately protect the interests of the New York Class. Plaintiff Kasiotis' interests are not antagonistic to but, rather, are in unison with, the interests of the New York Class members.

106.    Plaintiff Kasiotis' counsel has broad experience in handling class action wage-and-hour litigation, and is fully qualified to prosecute the claims of the New York Class in this case.

107.    The questions of law or fact that are common to the New York Class predominate over any questions affecting only individual members. The primary questions that will determine Defendant's liability to the New York Class are common to the class as a whole, and predominate over any questions affecting only individual class members.

108.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring New York Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many New York Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of

pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

109.    Defendant's practices and policies of not paying Plaintiff Kasiotis and other similarly-situated traffic control specialists for all time worked and overtime compensation at the rate of one and one-half times their regular rate of pay for all hours worked over 40 each workweek violated 12 NYCRR § 142-2.2.

110.    Defendant's failure to keep records of all the hours worked each workday and the total hours worked each workweek by Plaintiff Kasiotis and other similarly-situated traffic control specialists, and for which wages remain unpaid violated 12 NYCRR § 142-2.6.

111.    By engaging in the above-described practices and policies, Defendant willfully, knowingly and/or recklessly violated New York Wage Law.

112.    As a result of Defendant's practices and policies, Plaintiffs and other similarly-situated employees have been damaged in that they have not received wages due to them pursuant to New York Wage Law; and because wages remain unpaid, damages continue.

## COUNT THREE - INDIANA STATE VIOLATIONS
### (Class Action – Plaintiff Anglin)

113.    Plaintiffs incorporate by reference the foregoing allegations as if fully rewritten herein.

114.    Plaintiff Anglin brings this claim as a class action pursuant to Fed. R. Civ. P. 23 for Defendant's violations of the Indiana Wage Payment Statute. I.C. 22-2-5 *et seq.* ("IWPS"), individually and on behalf of all persons currently or previously employed by Defendant in Indiana within the last two (2) years.

115.    At all relevant times, Defendant did business in Indiana, and Plaintiff Anglin and others similarly-situated were employees covered by the IWPS.

116.    Plaintiff Anglin brings this action pursuant to Fed. R. Civ. P. 23, individually and behalf of all other current or former similarly situated persons employed by Defendant in Indiana within the last three (2) years defined as:

> **All current and former traffic control specialists employed by AWP, Inc. in Indiana at any time between two (2) years preceding the filing of this Complaint and the present (the "Indiana Class").**

117.    Defendant violated IWPS § 22-2-5-1 by failing pay Plaintiff and the Indiana Class members all wages earned.

118.    Plaintiff and other similarly situated employees were not exempt from the protections of the IWPS.

119.    The class is so numerous that joinder of all class members is impracticable. Plaintiff Anglin is unable to state the exact size of the potential Indiana Class but, upon information and belief avers that it consists of at least 40 persons.

120.    Named Plaintiff Anglin's claims are typical of the claims of the Indiana Class, because they were subject to the same unlawful wage policies and practices of Defendant.

121.    Particularly with the type of wage claim and practice at issue in this case, there are questions of law or fact common to the Indiana Class including: whether Defendant failed to pay the Indiana Class members for all wages earned.

122.    Plaintiff Anglin will adequately protect the interests of the Indiana Class. Plaintiff Anglin's interests are not antagonistic to but, rather, are in unison with, the interests of the Indiana Class members.

123.    Plaintiff Anglin's counsel has broad experience in handling class action wage-and-hour litigation, and is fully qualified to prosecute the claims of the Indiana Class in this case.

124.    The questions of law or fact that are common to the Indiana Class predominate over any questions affecting only individual members. The primary questions that will determine Defendant's liability to the Indiana Class are common to the class as a whole, and predominate over any questions affecting only individual class members.

125.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Indiana Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Indiana Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

126.    Defendant's practices and policies of not paying Plaintiff Anglin and other similarly-situated traffic control specialists for all wages earned, and for which wages remain unpaid violated the IWPS.

127.    Defendant's failure to pay all wages earned were acts of bad faith, and Defendant is liable for damages arising under Ind. Code Ann. § 22-2-5-2.

128.    By engaging in the above-described practices and policies, Defendant willfully, knowingly and/or recklessly violated the IWPS.

129.    As a result of Defendant's practices and policies, Plaintiffs and other similarly-situated employees have been damaged in that they have not received wages due to them pursuant to the IWPS; and because wages remain unpaid, damages continue.

## COUNT FOUR - PENNSYLVANIA STATE VIOLATIONS
### (Class Action – Plaintiff Ransome)

130.   Plaintiffs incorporates by reference the foregoing allegations as if fully rewritten herein.

131.   Plaintiff Ransome brings this claim as a class action pursuant to Fed. R. Civ. P. 23 for Defendant's violations of Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.101 *et seq.,* and the Pennsylvania Wage Payment and Collection Law 43 P.S. §§ 260.1, *et seq.* ("Pennsylvania Wage Acts"), individually and on behalf of all persons currently or previously employed by Defendant in Pennsylvania within the last three (3) years.

132.   At all relevant times Plaintiff Ransome was an employee and Defendant was an employer pursuant to the Pennsylvania Wage Acts.

133.   Other employees similarly situated to Plaintiff Ransome are or were employed by Defendant in Pennsylvania within the last three (3) years.

134.   Plaintiff Ransome and other similarly-situated employees regularly worked over 40 hours in a workweek during the last three (3) years for Defendant in Pennsylvania, but were not paid all wages earned, including overtime.

135.   Plaintiff Ransome and other similarly situated employees were not exempt from the protections of the Pennsylvania Wage Acts.

136.   Plaintiff Ransome brings this action pursuant to Fed. R. Civ. P. 23, individually and behalf of all other current or former similarly situated persons employed by Defendant in Pennsylvania within the last three (3) years defined as:

**All current and former traffic control specialists employed by AWP, Inc. in Pennsylvania at any time between three (3) years preceding the filing of this Complaint and the present (the "Pennsylvania Class")**.

137.    The class is so numerous that joinder of all class members is impracticable. Plaintiff Ransome is unable to state the exact size of the potential Pennsylvania Class but, upon information and belief aver that it consists of at least 40 persons.

138.    Named Plaintiff Ransome's claims are typical of the claims of the Pennsylvania Class, because they were subject to the same unlawful wage policies and practices of Defendant.

139.    There are questions of law or fact common to the Pennsylvania Class including: whether Defendant failed to pay the Pennsylvania Class members for all time worked and whether that resulted in the underpayment of overtime.

140.    Plaintiff Ransome will adequately protect the interests of the Pennsylvania Class. Plaintiff Ransome's interests are not antagonistic to but, rather, are in unison with, the interests of the Pennsylvania Class members.

141.    Plaintiff Ransome's counsel has broad experience in handling class action wage-and-hour litigation, and is fully qualified to prosecute the claims of the Pennsylvania Class in this case.

142.    The questions of law or fact that are common to the Pennsylvania Class predominate over any questions affecting only individual members. The primary questions that will determine Defendant's liability to the Pennsylvania Class are common to the class as a whole, and predominate over any questions affecting only individual class members.

143.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Pennsylvania Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Pennsylvania Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of

pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

144.    Defendant's practices and policies of not paying Plaintiffs and other similarly-situated traffic control specialists for all time worked and overtime compensation at the rate of one and one-half times their regular rate of pay for all hours worked over 40 each workweek, and for which wages remain unpaid violated 43 P.S. § 333.101 *et seq.* and 43 P.S. §§ 260.1, *et seq.*

145.    Defendant's failure to keep records of all the hours worked each workday and the total hours worked each workweek by Plaintiff Ransome and other similarly-situated traffic control specialists violated 43 P.S. § 333.108.

146.    By engaging in the above-described practices and policies, Defendant willfully, knowingly and/or recklessly violated the Pennsylvania Wage Acts.

147.    As a result of Defendant's practices and policies, Plaintiff Ransome and other similarly-situated employees have been damaged in that they have not received wages due to them pursuant to the Pennsylvania Wage Acts; and because wages remain unpaid, damages continue.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, and all those similarly situated, collectively pray that this Honorable Court:

A.  Issue an order permitting this litigation to proceed as a collective action;

B.  Order prompt notice, pursuant to 29 U.S.C. § 216(b), to all collective members that this litigation is pending and that they have the right to "opt in" to this litigation;

C.  Award Plaintiffs and the classes they represent actual damages for unpaid wages;

D.  Award Plaintiffs and the classes they represent liquidated damages equal in amount to the unpaid wages found due to Plaintiffs and the class;

E.  Award Plaintiffs and the class they represent pre- and post-judgment interest at the statutory rate;

F.  Award Plaintiffs and the class they represent attorneys' fees, costs, and disbursements; and

G.  Award Plaintiffs and the class they represent further and additional relief as this Court deems just and proper.

Respectfully submitted,

/s/ Hans A. Nilges
Hans A. Nilges (OH Bar # 0076017)*
Shannon M. Draher (OH Bar # 0074304)*
**Nilges Draher LLC**
7266 Portage Street, N.W., Suite D
Massillon, OH 44646
Telephone:     (330) 470-4428
Facsimile:     (330) 754-1430
Email:         hans@ohlaborlaw.com
               sdraher@ohlaborlaw.com

/s/ Robi J. Baishnab
Robi J. Baishnab (OH Bar # 0086195)*
**Nilges Draher LLC**
34 N. High St., Ste. 502
Columbus, OH 43215
Telephone:     (614) 824-5770
Facsimile:     (330) 754-1430
Email:         rbaishnab@ohlaborlaw.com

*Counsel for Plaintiff*

*Requests for *pro hac vice* admission filed contemporaneously with this Complaint.

## JURY DEMAND

Plaintiffs demands a trial by jury on all eligible claims and issues.

/s/ Hans A. Nilges
Hans A. Nilges (OH Bar # 0076017)

*Counsel for Plaintiff*