**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JACK KASIOTIS, ET AL.,** | ) | **CASE NO.5:19CV648** |
| | ) | |
| **Plaintiff,** | ) | **SENIOR JUDGE** |
| | ) | **CHRISTOPHER A. BOYKO** |
| **vs.** | ) | |
| | ) | |
| **AWP, INC.,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, SR. J.:**

This matter is before the Court on Defendant AWP, Inc.'s Motion for Judgment on the Pleadings.  (ECF # 81). For the following reasons, the Court grants in part, Defendant's Motion and dismisses Plaintiffs' Fair Labor Standards Act claims.  The Court declines to exercise its supplemental jurisdiction over Plaintiffs' state law claims.

Plaintiffs' Second Amended Complaint is brought on behalf of traffic control specialists employed by Defendant.  According to Plaintiffs, Defendant failed to pay them for all hours worked, resulting in unpaid earned wages, including overtime compensation at the rate of one and one-half times their regular rates of pay for all of the hours they worked over 40 hours each workweek, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

§§ 201-219.

Plaintiffs also assert a class action claim for unpaid wages in violation of New York wage and hour laws, in particular 12 NYCRR § 142-2.1 et seq. ("New York Wage Law") pursuant to NY CLS Labor § 198; violations of the Indiana Wage Payment Statute. I.C. 22-2-5 et seq. ("IWPS"); and violations of Pennsylvania Minimum Wage Act of 1968, 43 P.S. §§ 333.101 et seq. ("Pennsylvania Wage Act").

Plaintiffs contend Defendant AWP, Inc. provides temporary work zone traffic control and flagging throughout the United States.  Plaintiffs were employed as traffic control specialists and were paid at an hourly rate.  Plaintiffs performed various duties, including standing and controlling traffic through temporary work zones, as well as transporting equipment, tools, and other traffic control specialists to Defendant's worksites.

In particular, Plaintiffs allege Defendant requires many of these traffic control specialists, which Plaintiffs describe as "flagger-drivers" to transport other traffic control specialists, called flagger-passengers by Plaintiffs, to and from worksites in company-owned pickup trucks.  Consequently, these flagger-drivers begin and end their workdays at either a Defendant work location or their own homes.  However, Defendant only paid them from the time they arrived at the worksite to the time they left the worksite.  Therefore, according to Plaintiffs, they were not paid for all hours worked.

Defendant specifically designated flagger-passengers that the flagger-drivers were to pick up and drive home.  The time spent by flagger-drivers picking up and dropping off flagger- passengers is not compensated by Defendant.  Moreover, Plaintiffs contend they were not paid for transporting tools and equipment to and from the worksite; refueling Defendant-

owned trucks and  inspecting and maintaining Defendant-owned trucks pre and post work.

**Defendant's Motion**

According to Defendant, Plaintiffs' claims are barred by the Portal to Portal Act, 29 U.S.C. §254 ("PPA"), which excepts from compensability commuting to and from work, acts incidental to use of an employer's vehicle for commuting and other pre and post work activities that are not integral or indispensable to the work Plaintiffs were hired to perform.

Count One of Plaintiffs' Second Amended Complaint alleges overtime pay violations under the FLSA.  In order to satisfy their burden, Plaintiffs must show they were not paid for compensable work.  In response to the explosion of FLSA-related litigation, Congress enacted the Portal to Portal Act 29 U.S.C. § 251(b).  The PPA expressly exempted from compensation travel time to and from work.  *Id* at 254(a).  Section (a)(2) further restricted other pre and post work activities as non-compensable.

Subsequently, Defendant argues that Congress passed the Employee Commuting Flexibility Act ("ECFA"), 29 U.S.C. § 254(a), in 1996, which clarified that home to work travel in a company car and any activities incidental to an employee's use of a company vehicle for commuting are non-compensable.   Although the ECFA did not define "incidental" activities, it did acknowledge that routine vehicle safety inspections and other minor tasks such as fueling the vehicle meet the definition of incidental.

The United States Supreme Court in *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27 (2014) further clarified what is integral and indispensable compensable work under the FLSA in response to lower court cases holding that it was work required by and beneficial to the employer.  The Supreme Court rejected this interpretation, holding instead that integral

3

and indispensable must be tied to the productive work an employee was hired to perform. Because commuting, carrying equipment and tools and inspecting and fueling company-provided vehicles are not integral and indispensable to a flagger-drivers principal activity of traffic control, Defendant argues these incidental tasks are non-compensable under the FLSA and Defendant is entitled to judgment.

Defendant contends its arguments are amenable to resolution on a motion for judgment on the pleadings as there is no factual dispute on the nature of the work performed. Instead, the arguments presume the facts as alleged are true, but regardless, they are non-compensable as a matter of law.  As none of Plaintiffs' alleged compensable job duties are integral and indispensable to their principal activities, Defendant asserts they are barred by the PPA and ECFA and Plaintiffs' Second Amended Complaint must be dismissed.

Defendant further argues that the Plaintiffs' state law claims fails as a matter of law as well because New York,  Pennsylvania and Indiana state wage laws are identical to the FLSA and therefore, for the same reasons Plaintiffs' FLSA claim fails their state law claims fail as well.  Moreover, Defendant asserts that the Indiana state statute Plaintiffs bring their state law claim under only permits recovery for late payment of wages, not non-payment of wages.

Finally, Defendant moves for judgment on Plaintiff Mary Ware's Pennsylvania state law claim for lack of subject matter jurisdiction because her employment is governed by a collective bargaining agreement and her claim is preempted by Section 301 of the Labor Management Relations Act of 1947.  Her claim further fails because  the CBA expressly requires Plaintiffs grieve any disputes over wages under the FLSA or any state wage statute.

**Plaintiffs' Opposition**

According to Plaintiffs, their Second Amended Complaint satisfies the federal pleading standard of Fed. R. Civ P. 8 in that it provides "a short and plain statement of the claim showing that the pleader is entitled to relief..."  Moreover, it satisfies the *Twombly/Iqbal* standard of plausibility.

In *Integrity Staffing*, the United States Supreme Court defined "integral" to mean, "belonging to or making up an integral whole; constituent, component; specifically necessary to the completeness or integrity of the whole; forming an intrinsic portion or element as the distinguished from an adjunct or appendage." *Integrity Staffing*, 574 U.S. at  33.   The Supreme court further defined "indispensable" as a duty "that cannot be disposed with, remitted, set aside, disregarded, or neglected." *Id.*

 Contrary to Defendant's assertion, Plaintiffs argue they do not seek compensation for mere commuting to and from work.  Rather, they are flagger-drivers and shuttling other employees to and from job sites was a principal activity of their job, as was the transportation of equipment.  Any disputes over the nature of their duties is not ripe for determination on a motion for judgment on the pleadings.  Instead, Plaintiffs argue that the Court must accept as true Plaintiffs' factual allegations and resolve these factual disputes on summary judgment as questions about the scope of a Plaintiffs' job duties are appropriately resolved only after discovery.

Because shuttling workers and equipment to and from job sites is an integral and indispensable part of Plaintiffs' principal activities, all work performed from commencement of the shuttling services to the conclusion of the same are compensable under the FLSA,

according to Plaintiffs.

Regarding Plaintiffs' state law claims, Plaintiffs assert judgment is not warranted because New York law incorporates the PPA, therefore, for the same reasons that Defendant's arguments fail on the FLSA, its arguments under New York law fail as well.  Furthermore, Pennsylvania law does not incorporate the PPA and therefore affords broader protection and thus militates against dismissal.  In addition, Plaintiff Anglin has sufficiently stated a failure to pay under Indiana law and Defendant misstates the relevant law.

Finally, Plaintiff Ware's state claim need not be interpreted through a CBA as the relevant CBA merely requires that overtime pay rules are to be governed by applicable federal law and Ware was not required to exhaust administrative remedies before bringing suit.

## LAW AND ANALYSIS

### Standard of Review Fed. R. Civ. P. 12(c)

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings is governed by the same legal standard as a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted.  *Almendares v. Palmer*, 284 F.Supp. 2d 799, 802 (N.D. Ohio 2003).  Therefore, as with a motion to dismiss, the Court must test the sufficiency of the complaint and determine whether  "accepting the allegations in the complaint as true and construing them liberally in favor of the plaintiff, the complaint fails to allege 'enough facts to state a claim for relief that is plausible on its face.'"  *Ashmus v. Bay Vill. Sch. Dist. Bd. of Educ.*, 2007 U.S. Dist. LEXIS 62208 (N.D. Ohio 2007), *quoting Bell Atlantic Corp. v. Twombly*, U.S., 127 S.Ct. 1955, 1974 (2007).  Claims alleged in the

6

complaint must be "plausible," not merely "conceivable." *Id*.  Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990).  A Rule 12(c) motion "is granted when ***no material issue of fact*** exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991) (emphasis added).  A written instrument attached to a pleading is a part of the pleading for all purposes. Fed. R. Civ. P. 10(c).  "In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 335–36 (6th Cir. 2007).

"In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  Factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990).  The United States Supreme Court, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), discussed *Twombly* and provided additional analysis of the motion to dismiss standard:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption

> of truth.  While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.  When there
> are well-plead factual allegations a court should assume their veracity
> and then determine whether they plausibly give rise to an entitlement
> to relief.  *Id*. at 679.

According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*."  *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir.2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir.2007)).

The Court should disregard conclusory allegations, including legal conclusions couched as factual allegations.  *Twombly*, 550 U.S. at 555; *J & J Sports Prods. v. Kennedy*, No. 1:10CV2740, 2011 U.S. Dist. LEXIS 154644, *4 (N. D. Ohio Nov. 3, 2011).

"Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations ... a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable ..."  *Twombly*, 550 U.S. at 556.

**Fair Labor Standards Act ("FLSA")**

Under the FLSA, all hours worked must be compensated.  29 U.S.C. §§ 206, 207. When enacted in 1938, the FLSA established a standard for minimum wage and overtime compensation for each hour worked in excess of forty hours in each workweek.  However, the Act did not define the key terms "work" and "workweek."  Consequently, in the years immediately following the enactment of the FLSA, those terms were described broadly.

In 1947, Congress introduced the Portal-to-Portal Act.  The Act excepted two activities the Supreme Court previously deemed compensable:  "(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities

which such employee is employed to perform, and (2) activities which are preliminary to or

post-liminary to said principal activity or activities, which occur either prior to the time on any

particular workday at which such employee commences, or subsequent to the time on any

particular workday at which he ceases, such principal activity or activities."  29 U.S.C. §

254(a).

As provided in the Department of Labor's regulations at 29 C.F.R. § 785.35 :

An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites. **Normal travel from home to work is not worktime.**  (Emphasis added)**.**

However, travel from job site to job site during the workday, must be counted as hours

worked**.**  29 C.F.R. § 785.38.

In 1995, the ECFA amended the Portal–to–Portal Act by adding the following

language to 29 U.S.C. § 254(a):

For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

The Supreme Court has consistently interpreted "the term 'principal activity or

activities' [to] embrac[e] all activities which are an 'integral and indispensable part of the

principal activities.'"  *Integrity Staffing Solutions v. Busk*, 574 U.S. 27, 33 (2014); *IBP, Inc. v.

Alvarez*, 546 U.S. 21, 29–30 (2005) (quoting *Steiner v. Mitchell*, 350 U.S. 247, 252–253,

(1956)).

9

Thus, the PPA and the ECFA except from compensability any time spent:  (1) commuting to and from work; (2) performing activities that are incidental to the use of a company vehicle for commuting; and (3) performing all other pre- and post-liminary activities that are not "integral and indispensable"— i.e., an "intrinsic element of," and absolutely "indispensable to," the "productive work" that an employee is hired to perform.

It is no longer appropriate to focus on whether an employer required a particular activity.  "The integral and indispensable test is tied to the productive work that the employee is employed to perform." *Integrity Staffing*, 574 U.S. at 36; *IBP, Inc*., 546 U.S. at 42.   "A test that turns on whether the activity is for the benefit of the employer is similarly overbroad." *Integrity Staffing*, 574 U.S. at 36.

"Shop time" is compensable when it is indispensable to the employee's principal activities.  "Examples of activities during "shop time" that are integral to principal activities include reporting to a designated meeting place, receiving assignments, and loading equipment." *Chao v. Akron Insulation and Supply,* 184 Fed. App'x 508, 510 (6th Cir. 2006), *citing  Hodgson v. Am. Concrete Constr. Co.*, 471 F.2d 1183, 1185–86 (6th Cir.1973).  As  29 C.F.R. § 785.38 further instructs:  "Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice."

As for  the "continuous workday rule," compensable time comprises "the period between commencement and completion on the same workday of an employee's principal activity or activities, whether or not the employee engages in work throughout all that period."

10

*Vance v. Amazon.com, Inc.*, 852 F.3d 601, 614 (6th Cir. 2017).

The Supreme Court has instructed, "an employee who brings suit ... for unpaid minimum wages or unpaid overtime compensation ... has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946). "However, there is an additional, earlier premise at issue [...] namely, whether the alleged acts of the plaintiff constitute compensable "work" at all. The burden to prove that such work was performed necessarily includes the burden to demonstrate that what was performed falls into the category of compensable work." *Adams v. United States*, 471 F.3d 1321, 1326 (Fed. Cir. 2006); *see, e.g., Baker v. Barnard Constr.*, 146 F.3d 1214, 1216 (10th Cir.1998). On a motion for judgment on the pleadings, the Court must restrict itself to the "four corners" of the pleading. Thus, the Court's analysis must begin with the allegations in the Second Amended Complaint ("SAC").

### *Transporting Flagger-Passengers*

Plaintiffs' SAC alleges "traffic control specialists were employed by Defendant to perform non-exempt work, which primarily consisted of standing and controlling traffic through temporary work zones, as well as transporting equipment, tools, and other traffic control specialists to Defendant's meeting locations and/or worksites." (SAC ¶ 20). "Defendant requires many of its traffic control specialists ("flagger-drivers") to provide transportation to and from worksites to the remaining non-driver traffic control specialists ("flagger-passengers") in company-provided pickup trucks." (*Id.* ¶ 23). "Plaintiffs and other similarly-situated flagger-drivers typically started and ended each day at either an AWP business location or their own homes." (*Id.* ¶24). "Defendant paid Plaintiffs and other

11

similarly-situated flagger-drivers only for work performed from the time they arrived and left a worksite." (*Id.* ¶ 25). " Plaintiffs and other similarly-situated flagger-drivers were regularly required to pick up other AWP employees, from their homes or from a temporary employment agency, and transport them to their respective assigned worksite." (*Id* ¶ 27).

Defendants allege that commuting to and from work has been expressly determined to be non- compensable work under the PPA.  Moreover, the ECFA extended the definition of non-compensable commute time to the use of an employer's vehicle.  It held that the use of an employer's vehicle for travel and activities performed by an employee incidental to the use of the vehicle for commuting are not to be considered principal activities if the vehicle is used in the employer's normal commuting area and the vehicle is subject to an agreement between employer and employee.  This is particularly important since it requires the Court to consider the employer's normal commuting area not, as Plaintiffs argue, the employee's normal commuting area.

There does not appear to be any serious dispute that mere commute time to and from the flagger-passengers pick up site is not compensable.  At issue is the time spent by flagger-drivers from a flagger-passenger pick up site to a designated worksite and the time spent driving from the worksite to the flagger-passengers drop off site.

Against this backdrop, Plaintiffs' SAC alleges "having to pick up and drop off, transport flagger-passengers typically added additional drive time, and took Plaintiffs and other similarly-situated flagger-drivers beyond ***their normal commute***, when compared to a direct commute to a drive site.  (SAC ¶ 45 emphasis added).  Clearly, the SAC does not allege that flagger-drivers had to commute outside AWP's normal commute area, rather, the SAC

12

alleges picking up flagger-passengers took Plaintiffs outside their own normal commute area. In addition, the SAC is devoid of any allegation that work vehicles were not subject to an agreement.  Therefore, Plaintiffs have not alleged facts sufficient to show their picking up and dropping off other employees was compensable.

In addition, Plaintiffs' own allegations support the conclusion that their transporting of other traffic control specialists was merely commuting.  Paragraph 45 of the SAC expressly describes this transportation of flagger-passengers as "commuting."  Because a Court must consider the allegations in a complaint within the context of the complaint as a whole, one allegation that Plaintiffs were employed to transport passenger-flaggers cannot support a finding of FLSA compensable work when the majority of factual allegations support the conclusion they were merely commuting.  See *R.S. Scott Assocs., Inc. v. Timm Const. Co. LLC,* No. 14-CV-13338, 2014 WL 7184448, at *5 (E.D. Mich. Dec. 16, 2014) ("But relevant case law counsels a court to view the individual allegations in context of the whole complaint.").

Not only does the SAC describe the transportation of passenger-flaggers as "commuting," but it further repeatedly describes picking up passenger-flaggers at their homes and driving them "to their respective assigned worksite."  (SAC at ¶'s 41, 54, 57).  As the legislative history of the ECFA makes clear, it was intended to amend the Portal to Portal Act "to clarify that use of employer's vehicle for travel by an employee and any incidental activities performed by an employee which are related to the use of the vehicle for commuting shall not be considered to be part of the employee's principal activities...."  H.R Rep. 104-585 (1996) Summary.  It made this clarification subject to the commute being within the

13

employer's normal commuting area and an agreement between the employer and employee on the use of company-provided vehicle, which this Court has already determined Plaintiffs SAC fails to allege any exception.

Moreover, the ECFA legislative history shows it was intended to clarify that "the use of an employer-provided vehicle for travel from an employee's home to the first work location at the start of the workday and from the last work location to the employee's home at the end of the workday.  Such travel is not considered part of the employee's principal activities and therefore, the time spent in such commuting is not required to be compensated under the Fair Labor Standards Act of 1938."  *Id* at *4.  "This clarification regarding an employee's "principal activity or activities" applies as well to activities performed by an employee which are incidental to the use of the employer-provided vehicle for travel by the employee at the beginning and end of the workday."  (*Id.*).  Because the SAC clearly alleges the employer-provided vehicle is used to transport the flagger-driver to and from worksites, the pickup and drop off of flagger-passengers does not alter the essential function performed as described in the SAC- i.e. - commuting to and from the worksites.  Thus, it is non-compensable work under th FLSA as amended by the Portal to Portal Act and ECFA.

In a companion case alleging similar claims of FLSA violations against AWP, Inc. for failure to pay flagger-drivers for time spent transporting other employees and equipment, this Court found that Plaintiff could not meet the Rule 12(b)(6) standard as Plaintiff failed to sufficiently plead facts demonstrating that transporting other employees was an integral part of their job duties.

In *Luster v. AWP, Inc.,* No. 1:16CV2613, Plaintiffs alleged Defendant AWP, Inc.'s

14

failure to pay them for time spent fueling their company-owned vehicles, performing vehicle checks, securing tools and equipment and transporting co-workers to and from job sites violated the FLSA.  Plaintiffs alleged Defendant required Plaintiffs, who had been provided company vehicles, to perform these duties and that they were indispensable and integral to their jobs.

In finding that the Plaintiffs' Complaint failed to plausibly assert FLSA violations, the Court held that routine maintenance and inspection tasks are not compensable under the FLSA.  Nor did the PPA, ECFA and relevant legislative history and caselaw make any exception for travel time in a uniquely equipped employer vehicle.

Regarding the picking up of other employees and driving them to work sites, the Court found that employees in company-provided vehicles were not required to perform any work at a designated meeting spot before leaving for the job site and therefore the pickup and drop off of other flaggers was akin to normal commute time, which is non-compensable under the FLSA.  In so holding, the Court reiterated that merely because an employer requires the performance of such tasks or that such requirements benefit an employer  does not render it integral and indispensable to the work performed.  The Court also noted that Luster's Complaint did not allege Plaintiffs were required to travel outside the normal commuting area for the employer's business, or that no agreement between Defendant employee and Plaintiff employees governing their company-provided vehicle existed which would take it outside the ECFA amendment mirroring the pleading flaws in the SAC.

As the SAC's factual allegations make clear, Plaintiffs' picking up and dropping off of flagger-passengers is akin to carpooling and is therefore not compensable.  See *Smith v. Aztec*

*Well Servicing Co.,* 462 F.3d 1274, 1288 (10th Cir. 2006) ("In this case, however, the plaintiffs allege that Aztec required them to travel together 'because there was insufficient parking at the well sites' and it wanted 'a full crew [present] ... at the start of the job.'  In other words, the plaintiffs were required to travel together for reasons related to the logistics of commuting, rather than anything integral and indispensable to their principal activities.").  In *Smith* the Tenth Circuit held that carpooling by plaintiffs, even if mandated by their employer, did not transform the nature of the commute to compensable work.   "Consequently, unless the plaintiffs' travel was an integral and indispensable part of their principal activities ***because*** they were traveling together with their crew, then the alleged carpooling requirement does not transform the plaintiffs' travel time into compensable work hours." *Id.*  (Emphasis added). "[E]ven mandatory carpooling to and from the well sites is still "riding, or traveling" within the meaning of the Portal–to–Portal Act."). *Id.*

Here, based on Plaintiffs' own factual allegations that the picking up and dropping off of flagger-passengers is for the purpose of transporting them to and from the worksite, is akin to carpooling and is therefore, non-compensable.

In short, based on the allegations in the SAC, the relevant statues, legislative history and caselaw, and consistent with the Court's prior decision in *Luster*, the Court grants dismissal of Plaintiff's FLSA claim.

This case does present a very close call.  Paragraph 20 the SAC alleges, "Plaintiffs and other similarly-situated traffic control specialists were employed by Defendant to perform non-exempt work, which primarily consisted of standing and controlling traffic through temporary work zones, as well as transporting equipment, tools and other traffic control

specialists to Defendants' meeting locations and/or worksites.

Defendant contends that Defendant requirements are not properly considered when determining whether an employer has violated the FLSA for failing to compensate employees for integral and indispensable work.  Moreover, it argues that Plaintiffs representation of the same are mere legal conclusions that the Court must reject when deciding a Rule 12(c) motion.

While true, were the Court to read the paragraph 20 of the SAC in isolation it would support an FLSA claim for uncompensated work as Plaintiffs allege  that driving employees to and from worksites was a principal activity they were specifically employed to do.  Unlike the allegations in the *Luster* case which this Court held did not make such an allegation, here Plaintiffs clearly allege that they were employed to drive other employees to and from worksites.  As the Supreme Court held in *Integrity Staffing*, the "integral and indispensable test is tied to the productive work that the employee is employed to perform."  *Integrity Staffing* , 574 U.S. at 36.   However, as previously discussed the Court must read the allegations in the SAC as a whole and those allegations clearly allege the driving of flagger-passengers to and from worksites was for commuting.

Plaintiffs more recently cited as supplemental authority a recent Department of Labor case against AWP, Inc in Michigan wherein AWP entered into a consent judgment for FLSA violations, including failure to pay flagger-drivers time spent transporting other employees to and from the job sites while in company-provided vehicles.  A Michigan court held that genuine issues of fact militated against summary judgment in AWP's favor on two issues: 1) whether flagger-drivers were employed to transport other flaggers to and from job sites and, 2)

whether this transportation was integral to the job of flagging.  These facts included whether the transporting of other employees by flagger-drivers was incidental to or integral part of their jobs.  Because flagging is a two person job at minimum and because there were genuine issues of fact that employees were not permitted to drive their own personal vehicles to job sites, summary judgment was inappropriate.  Thereafter, the parties entered into the consent judgment.  However, as AWP points out that consent judgment expressly held it was non binding or dispositive of any similar claims and this Court is required to consider the allegations in the SAC.  Based on the Court's reading of the same, if holds that Plaintiffs claims for compensation for time spent transporting flagger-passengers to and from worksites is not compensable under the FLSA and grants Defendant's Motion for Judgment on the Pleadings on this claim.

**Pre and post trip inspections, transporting tools  and fueling**

The Court agrees with Defendant that pre and post-trip vehicle inspections and the transportation of tools are not compensable as these are incidental to Plaintiffs' principal activities under the ECFA. See  *Chambers v. Sears Roebuck & Co.* 428 Fed. App'x. 400, 409 (5th Cir. 2011).  See H.R. Rep. No. 104-585 at 11 (1996).  (" Likewise, routine vehicle safety inspections or other minor tasks have long been considered preliminary or postliminary activities and are therefore not compensable. Merely transporting tools or supplies should not change the noncompensable nature of the travel.").  H.R. REP. 104-585, 5.  See also, *Aiken v. City of Memphis, Tennessee,* 190 F.3d 753, 759 (6th Cir. 1999) ("[R]outine vehicle safety inspections or other minor tasks have long been considered preliminary or postliminary activities and are therefore not compensable.").

18

Neither is the time spent fueling a vehicle compensable under the ECFA and its legislative history as it is incidental to the commute.

**State Law Claims**

Therefore, for the foregoing reasons, the Court grants in part Defendant's Motion and dismisses Plaintiffs' FLSA claims.  The Court declines to exercise its supplemental jurisdiction over Plaintiffs' state law claims and they are dismissed without prejudice.

IT IS SO ORDERED.

/s/Christopher A. Boyko
CHRISTOPHER A. BOYKO
Senior United States District Judge